UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KI KANG LEE,<br><br>  Petitioner,<br><br>v.<br><br>PATRICK GLEBE,<br><br>  Respondent. | CASE NO. C14-05603 RBL JRC<br><br>REPORT AND RECOMMENDATION<br><br>NOTED FOR:<br>MARCH 20, 2015 |

The District Court referred this petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254, to United States Magistrate Judge J. Richard Creatura. The referral is made pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR3 and MJR4.

The Court recommends denying this petition because the superior court sentenced petitioner on a charge for which he was convicted and the fact that the jury also convicted him of lesser included offense did not deprive him of any constitutional right. The balance of petitioner's arguments were also addressed by the state courts and those rulings do not violate clearly established constitutional standards.

BASIS FOR CUSTODY

Petitioner is in custody pursuant to a state court judgment and sentence following his convictions for Attempted First Degree Murder and First Degree Assault (Dkt. 16, Exhibit 1, Judgment and Sentence, *State v. Lee* Pierce County Cause No. 06-1-05223-6).

FACTS AND PROCEDURAL HISTORY

The Washington State of Appeals summarized the facts as follows:

> Lee and Jin Kyung Kim started dating in late 2002. In 2005, they opened a bakery in Tacoma. Because of visa restrictions, the fact that Kim's family lives in Korea, and a tumultuous relationship with Lee, Kim returned to Korea. Lee contacted Kim on several occasions and asked her to return to the United States. Kim returned for short periods. Lee became quite upset on several occasions when Kim refused to return, and he threatened to kill Kim's parents unless she did so. He also left abusive voicemail messages for Kim and her family members. Despite these threats, Kim briefly returned to help Lee open a second bakery in Tacoma.
>
> Lee asked Kim to return to the United States to participate in a trial involving their business, promising to end the relationship and not physically hurt Kim or her family members if she would do so. Kim agreed, returning to the United States on October 31, 2006. Lee picked Kim up at the airport midday and they started to argue soon thereafter. Lee insisted that Kim stay with him during her visit, but Kim refused. Kim accompanied Lee on a series of errands, including a brief stop at the bakery, where Lee placed a cake box in the trunk of his car.
> Later that night, Kim and Lee attended a business dinner at a restaurant. Lee drank a bottle of Korean alcohol at dinner. When Kim and Lee left the restaurant, Kim sat in the driver's seat because she did not want to stay with Lee and she was concerned Lee would not take her to a hotel. Before they left the restaurant, Lee removed the cake box from the trunk of his car and placed it in the back seat. Lee then sat in the front passenger seat.
>
> As Kim was driving, Lee asked Kim for her father's phone number but did not say why he wanted it. Kim refused to give it to him. An argument ensued and Lee ordered Kim to pull over to the side of the road and continued to ask for Kim's father's number. After Kim refused again, Lee grabbed a kitchen knife from the cake box on the rear passenger seat and stabbed her. Kim then relented. While making the phone call, Lee stuck the knife into a tissue box. Kim tried to grab Lee's hands, but he put his hands around her neck and choked her, asking her "Do you want me to kill you this way?" 4 Report of Proceedings (RP) at 111. After she released his hands, Lee stopped choking her and stabbed her again once or twice while waiting for the call to Kim's father to connect. Lee again stuck the

REPORT AND RECOMMENDATION - 2

knife in the tissue box and held Kim's head against the seat while he spoke to her father, asking him "Do you love your daughter?" 4 RP at 114. While Lee was on the phone, Kim escaped from the car and ran down the street. Lee chased her with the knife. Several witnesses tackled Lee and restrained him until police arrived. Emergency medical technicians treated Kim on the scene, and an ambulance took her to a hospital where doctors treated her for several knife-inflicted lacerations. Kim also had red marks on her neck consistent with choking.

The State charged Lee with attempted [footnote omitted] first degree murder with a deadly weapon. [footnote omitted] The State amended the information to add the first degree assault with a deadly weapon charge. [footnote omitted]

Before trial, the State moved to admit Kim's testimony that Lee had threatened her and her family. Lee objected to this testimony. The trial court admitted this testimony under ER 404(b).

At trial, Kim testified that (1) after she tried to cut off communication with Lee, he threatened to kill her family and asked her to pick a member of her family for him to kill; (2) Lee left numerous voicemail messages—as many as 88 in one day—in which he cursed and threatened her family; (3) Lee told her that he would promise not to hurt her or her family if she agreed to come back and help with the trial related to their bakery business. She also testified that during the attack she thought Lee told her that she "needed to die" and was "someone that should die." 4 RP at 110.

Dr. Lori Thiemann, a Western State Hospital psychologist who evaluated Lee's competency before trial, testified that Lee was capable of forming intent at the time of the offense. Dr. Thiemann also testified that Lee's intoxication would not have prevented him from forming intent or the requisite premeditation.

Dr. Paul Leung, a psychiatrist, testified in Lee's defense. Leung testified that Lee could not remember the details of the events of the night in question. He explained that he believed the memory loss derived from Lee's mind rejecting the traumatic, extraordinary events of the evening. Dr. Leung testified that Lee suffered from major depression and that he took medications that would have increased side effects when mixed with alcohol. Dr. Leung testified that Lee had told him that he had consumed "quite a bit of alcohol" in the restaurant on the evening in question. 8 RP at 389. Dr. Leung did not know if that quantity of alcohol was enough to have made Lee pass out. Dr. Leung did not testify that the alcohol or medications would have caused Lee to black out or would have caused Lee's inability to remember the evening. Dr. Leung ultimately opined that Lee could not have formed intent and that he did not intend or plan to harm Kim. With regard to Lee's threats, Dr. Leung testified that, in Asian culture, people sometimes make statements that sound like threats even though they do not intend the statements as threats. On cross-examination, Dr. Leung stated that Lee engaged in "goal-directed" behavior, such as discussing with Kim which of them

would drive, asking Kim for her father's phone number, and moving the cake box from the trunk area to the backseat. 8 RP at 413.

Lee did not testify on his own behalf. Lee proposed a series of jury instructions, including voluntary intoxication, diminished capacity, and to convict instructions for the inferior degree crimes of second degree and third degree assault. The trial court refused Lee's proposed instruction on voluntary intoxication, finding that Dr. Leung had been unable to offer an opinion as to intoxication that night and that the evidence presented did not reasonably connect Lee's intoxication with the inability to form the required level of culpability. The trial court issued all of Lee's remaining proposed instructions. The jury convicted Lee of attempted first degree murder and first degree assault and returned special verdicts finding that Lee was armed with a deadly weapon on each of those counts. The trial court found that the assault conviction merged with the attempted murder conviction and sentenced Lee only on the attempted murder conviction.

(Dkt. 16, Exhibit 2, Opinion (2012), *State v. Lee*, Court of Appeals Cause No. 37675-0-II, at 1-5).

Petitioner appealed from his judgment and sentence to the Washington State Court of Appeals (Dkt. 16, Exhibit 3, Brief of Appellant, *State v. Lee,* Court of Appeals Cause No. 37675-0-II). Petitioner also filed a personal restraint petition that the court consolidated with the direct appeal (s*ee* Dkt. 16, Exhibit 6, Personal Restraint Petition, *In re Lee*, Court of Appeals Cause No. 38874-0-II).

The Washington State Court of Appeals initially reversed petitioner's conviction, finding that counsel was ineffective for not requesting a jury instruction on the lesser included offense of Second Degree Attempted Murder (s*ee* Dkt. 16, Exhibit 7, Opinion, *State v. Lee,* Washington State Court of Appeals Cause No. 37675-0-II). The state sought review by the Washington State Supreme Court (s*ee* Dkt. 16, Exhibit 8, Petition for Review, *State v. Lee*, Supreme Court Cause No. 84551-4). The Washington State Supreme Court granted review and remanded the case back to the Washington State Court of Appeals for reconsideration in light of *State v. Grier*, 171

| | |
|---|---|
| 1 | Wn.2d 17, 246 P.3d 1260 (2011) (Dkt. 16, Exhibit 10, Order, *State v. Lee*, Supreme Court Cause |
| 2 | No. 84551-4). |
| 3 | On remand, the parties submitted supplemental briefing (s*ee* Dkt. 16, Exhibit 12, |
| 4 | Supplemental Brief of Appellant; Exhibit 13, Supplemental Brief of Respondent).  After review |
| 5 | of the supplemental briefing, the Washington State Court of Appeals rejected petitioner's claim |
| 6 | and affirmed the convictions (s*ee* Dkt. 16, Exhibit 2).  The court found that counsel's decision |
| 7 | not to request a jury instruction on Second Degree Attempted Murder was not unreasonably |
| 8 | deficient representation (*id.).* |
| 9 | Petitioner sought review again by the Washington State Supreme Court (Dkt. 16, Exhibit |
| 10 | 14, Petition for Review, *State v. Lee*, Supreme Court Cause No. 87054-3).  The Washington |
| 11 | State Supreme Court denied review on June 5, 2012 (*see* Dkt. 16, Exhibit 15, Order, *State v. Lee*, |
| 12 | Supreme Court Cause No. 87054-3).  The Mandate issued on June 20, 2012 (*see* Dkt. 16, Exhibit |
| 13 | 16, Mandate, *State v. Lee,* Court of Appeals Cause No. 37675-0-II). |
| 14 | Petitioner filed another personal restraint petition in February of 2013 (Dkt. 16, Exhibit |
| 15 | 17, Personal Restraint Petition, *In re Lee*, Court of Appeals Cause No. 44602-2-II).  The |
| 16 | Washington State Court of Appeals denied this petition, as well (*see* Dkt. 16, Exhibit 21, Order |
| 17 | Dismissing Petition, *In re Lee*, Court of Appeals Cause No. 44602-2-II).  Petitioner again sought |
| 18 | review by the Washington State Supreme Court (Dkt. 16, Exhibit 22, Motion for Discretionary |
| 19 | Review, *In re Lee*, Supreme Court Cause No.  89349-7). The Commissioner of the Washington |
| 20 | State Supreme Court denied review (*see* Dkt. 16, Exhibit 23, Ruling Denying Review, *In re Lee*, |
| 21 | Supreme Court Cause No. 89349-7).  After an unsuccessful attempt to modify the |
| 22 | Commissioner's ruling, the Washington Court of Appeals issued a Certificate of Finality on |
| 23 | October 3, 2014 (Dkt. 16, Exhibit 26, *In re Lee*, Court of Appeals Cause No. 44602-2-II). |
| 24 | |

Respondent accurately summarizes the issues presented in petitioner's brief as follows:

1. When the trial court instructed the jury on both charges of attempted first degree murder and first degree assault, due process required the judge to also instruct the jury not to convict on both of the charges.

2. Lee's right to a jury trial included the right to a jury instruction on the lesser included offense of attempted second degree murder.

3. The denial of a jury instruction on the defense of voluntary intoxication deprived Lee of the right to present a defense.

4. Counsel provided ineffective assistance by not requesting a jury instruction on the lesser included offense of second degree attempted murder.

5. Counsel provided ineffective assistance by not calling witnesses, competently cross-examining witnesses, diligently seeking discovery, and presenting mitigating evidence.

6. Lee is entitled to relief due to cumulative error.

(Dkt. 14, page 6).

Respondent acknowledges that petitioner properly exhausted his state court remedies (*id*.).

## EVIDENTIARY HEARING NOT REQUIRED

Evidentiary hearings are not usually necessary in a habeas case. According to 28 U.S.C. §2254(e)(2) (1996), a hearing will only occur if a habeas applicant has failed to develop the factual basis for a claim in state court, and the applicant shows that:

(A) the claim relies on –

    (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or if there is
    (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

REPORT AND RECOMMENDATION - 6

28 U.S.C. §2254(e)(2) (1996).

Petitioner's claims do not rely on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable. Further, there are no factual issues that could not have been previously discovered by due diligence. Although petitioner claims that the jury should have been able to convict him of a lesser included offense, he does not argue actual innocence. Therefore, this Court concludes that an evidentiary hearing is not necessary to decide this case.

## STANDARD OF REVIEW

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. *Engle v. Isaac*, 456 U.S. 107, 119 (1983). 28 U.S.C. § 2254 explicitly states that a federal court may entertain an application for writ of habeas corpus "only on the ground that [petitioner] is in custody in violation of the constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). The Supreme Court has stated that federal habeas corpus relief does not lie for mere errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

## DISCUSSION

1. When the trial court instructed the jury on both charges of attempted First Degree Murder and First Degree Assault, due process did not require the judge to also instruct the jury not to convict on both of the charges.

Petitioner argues that when multiple offenses are charged, the court is required to instruct the jury not to convict on more than one charge based on the same set of facts (*see* Dkt. 7, p. 4).

There is no clearly established Supreme Court precedent that requires the jury to be so instructed. Here, the jury obviously concluded that petitioner was not only guilty of the greater charge of First Degree Attempted Murder, but also that the same facts supported a conviction of

1  the lesser charge. Since petitioner was sentenced based on the greater charge of First Degree

2  Attempted Murder, it is of no import that petitioner was also convicted of First Degree Assault.

3  Had the trial court sentenced petitioner for both crimes, then it may have implicated the

4  Double Jeopardy Clause, which protects a defendant from cumulative punishments for the same

5  offense. *See Ohio v. Johnson,* 467 U.S. 493, 500 (1984). But since there is no allegation that the

6  trial court did so here, the state court did not violate any clearly established federal right.

7     2. Lee's right to a jury trial did not include the right to a jury instruction on the lesser
      included offense of attempted second degree murder.

8  Petitioner argues that at trial his defense counsel did not request the lesser included

9  offense of Second Degree Attempted Murder (Dkt. 7, page 4). Petitioner acknowledges that the

10 court did properly instruct on First Degree Attempted Murder and First Degree Assault, which is

11 a lesser included offense (*id.*). Upon remand, and after considering the *Greir* case, 171 Wn.2d at

12 39, the Washington State Court of Appeals held that not instructing on the lesser included

13 offense of second degree assault is not a constitutional violation (*id.*).

14 There is no clearly established federal constitutional right to a lesser included offense

15 instruction in a non-capital case. *See Anderson v. Calderon* 232 F.3d 1053, 1081-83 (9th Cir.

16 2000) *overruled on other grounds, Osband v. Woodford*, 290 F.3d 1036, 1043 (9th Cir.2002).

17 As noted in *Beck v. Alabama*, 447 U.S. 625 (1980) and *Hopper v. Evans*, 456 U.S. 605 (1982),

18 although there is a due process right to an instruction on a lesser included offense in capital cases

19 when the failure to give an instruction left the jury with the all-or-nothing choice to find

20 defendant "not guilty" or "guilty of capital murder," those cases expressly did not decide

21 "whether the Due Process Clause would require the giving of such instructions in a non-capital

22 case." *Beck, supra* 447 U.S. at 638, note 14. To date, the United State Supreme Court has not

23 extended the right to instructions on lesser included offenses to non-capital cases.

24

REPORT AND RECOMMENDATION - 8

Furthermore, in this case the jury was not confronted with an all-or-nothing alternative because the jury was instructed on at least one other lesser included offense – First Degree Assault.

In light of the fact that this case does not involve a capital offense and in light of the fact that the lesser included offense of First Degree Assault was also given as an instruction, there is no clearly established United States Supreme Court precedent entitling petitioner to an instruction on Second Degree Attempted Murder.

3. The trial court did not violate clearly established federal law when it chose not to give a jury instruction on the defense of voluntary intoxication.

Petitioner claims that the superior court erred by not giving an instruction on the defense of voluntary intoxication even though petitioner had presented evidence of his intoxication at trial and offered an expert witness on the subject (Dkt. 7, page 8–9).

It should be noted that petitioner does not cite a single case that involves the interpretation of federal rights (*id.*). All of the cases cited in petitioner's brief involve an interpretation of state law (*see, e.g., State v. Kruger*, 116 Wn. App. 685, 67 P.2d 1147 (2003); *State v. Gabryshack*, 83 Wn. App. 249, 921 P.2d 549 (1996) (*cited* at Dkt. 7, p. 8). As noted above, a habeas corpus proceeding allows federal courts to intervene only to correct wrongs of a constitutional dimension. *See Engle v. Isaac*, 456 U.S. 107, 119 (1983). 28 U.S.C. § 2254(a) explicitly states that a federal court may only entertain an application for a writ of habeas corpus if petitioner is in custody "in violation of the Constitution or law or treaties of the United States." *Id.* Since this issue does not involve a federal wrong, it is not grounds for a habeas corpus petition.

REPORT AND RECOMMENDATION - 9

Because petitioner does not argue that the Washington State Court of Appeals' decision violated clearly established federal law, petitioner cannot obtain habeas relief under 28 U.S.C. § 2254(d).

4. Counsel was not ineffective by not requesting a jury instruction on the lesser included offense of second degree attempted murder.

In order to establish that petitioner was ineffectively assisted by counsel, petitioner must show that counsel's representation fell below an objective standard of reasonableness and that the deficient performance affected the result of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689.

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), it is not enough for a petitioner to convince this court that the state court applied *Strickland* incorrectly; rather, petitioner must show that the state court applied *Strickland* in an objectively unreasonable manner. 28 U.S.C.A. § 2254 (d) (1); *see Harrington v. Ritcher*, 562 U.S. 86, 131 S. Ct. 770, 785-88 (2011); *Bell v. Cone*, 535 U.S. 685, 694-95 (2002).

On reconsideration, the Washington State Court of Appeals determined that petitioner's counsel was not ineffective simply because he failed to put forth a proposed jury instruction on Second Degree Attempted Murder (*see generally* Dkt. 15, Exhibit 2, pp. 9-11). The Court of Appeals gave several reasons why this was not ineffective assistance of counsel. First, the court noted that petitioner did not pursue an all-or-nothing approach in the hopes that the jury would acquit the defendant entirely. Instead, petitioner had submitted a jury instruction on the lesser included offense of Second Degree Assault (*id.* at p. 9). Second, the court noted that pursuing an all-or-nothing strategy can be a legitimate trial tactic under *Grier* and does not constitute ineffective assistance of counsel (*id., citing* Grier, 171 Wn. 2d. at 42). Furthermore, the court

1 noted that petitioner had failed to show that defense counsel's decision not to request a lesser

2 included instruction was not tactical (Dkt. 15, Exhibit 2 at p. 10).  Petitioner also claims that his

3 counsel never discussed with him the decision not to submit an instruction on Second Degree

4 Attempted Murder (Dkt. 7, page 17).  Assuming this is the case, this does not, by itself,

5 constitute ineffective assistance of counsel.  The state court reasonably concluded that petitioner

6 failed to rebut the strong presumption of competence that counsel adequately consulted with

7 petitioner about his trial strategy (Dkt. 16, Exhibit 2, at 11-12). The state court reasonably

8 concluded that petitioner's self-serving affidavit was not sufficient to rebut the presumption that

9 counsel consulted with Lee (Dkt. 16, Exhibit 2, at 11-12). Also, as noted by respondent,

10 petitioner has not shown prejudice from this alleged failure to consult about proposed jury

11 instructions (Dkt. 14, page 25).  The jury had the option of convicting on a lesser included

12 offense only, and chose not to do so.  Therefore, there is no reason to conclude that the jury

13 would not have still convicted petitioner of the First Degree Attempted Murder, even if it had an

14 instruction on Second Degree Attempted Murder.

15    In summary, the Washington State Court of Appeals' decision explains why petitioner

16 was not ineffectively represented.  Petitioner has not demonstrated that the Court of Appeals'

17 decision violated any clearly established federal precedent.  Therefore, this Court recommends

18 that the petition be denied on this issue.

19     5. Counsel was not ineffective because he chose not to call certain witnesses, competently
cross-examining witnesses, diligently sought discovery, and presented mitigating
20        evidence.

21    With respect to petitioner's allegations of ineffective assistance of counsel as related to

22 these various issues, the Court of Appeals dealt with each of these issues and concluded that

23 petitioner's rights had not been violated (*see* Dkt. 16, Exhibit 2, pp. 19-20).  For example, the

24 Court of Appeals determined that counsel's timing of the interview of the victim was not

ineffective (*id.*). The Court also noted that there was no evidence that counsel had not properly prepared the defense expert for trial (*id.* at 20-21). Furthermore, petitioner failed to show that the expert's testimony would have been different if he had been prepared differently (*id.*). The Court of Appeals also rejected petitioner's claim regarding trial counsel's decision not to call three witnesses to testify (*id.* at pp. 21-22). As noted by the Court of Appeals, petitioner did not show that any of the proposed witnesses would have presented testimony that would have affected the outcome of the trial (*id.*). Furthermore, there is no evidence that the decision not to call certain witnesses was not a competent strategic decision (*id.*). In summary, petitioner has failed to meet the standard of showing that the Court of Appeals failed to enforce any clearly established federal right when it determined that petitioner was not inadequately represented by counsel. Therefore, this Court recommends denial of the petition on this ground.

6. Lee is not entitled to relief due to cumulative error.

With regard to this issue, the Court of Appeals determined that the cumulative error claim failed because petitioner did not show the existence of a single error – let alone multiple errors (Dkt. 15, Exhibit 2 at p. 23) ("Because we find no error, we hold that Lee was not deprived of his right to a fair trial.") Petitioner has not set forth grounds upon which the state court decision was unreasonable.

Although the Ninth Circuit has determined that a claim of cumulative error is based upon clearly established federal law (*see Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007), this does not relieve petitioner of the burden of demonstrating cumulative error and proving that such error impacted his case. In the absence of such proof, the Court of Appeals' decision does not violate clearly established federal law.

//

//

CERTIFICATE OF APPEALABLITY

Petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A certificate of appealability may issue only if petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Pursuant to this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to this petition.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on March 20, 2015, as noted in the caption.

Dated this 20th day of February, 2015.

J. Richard Creatura
United States Magistrate Judge